Charles A. DABOLL, Administrator of the Estate of Alan Gregory Daboll, Deceased, Appellant,

v.

Edward Frederick HODEN, Jr., et al., Appellees.

No. 56062.

Supreme Court of Iowa.

Oct. 16, 1974.

728

David E. Richter and Lyle A. Rodenburg, Council Bluffs, for appellant.

Johnson, Stuart, Tinley, Peters & Thorn, of Council Bluffs, for appellees.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and UHLENHOPP, JJ.

MASON, Justice.

This interlocutory appeal by plaintiff involves only the defendant-doctors in a wrongful death action brought by Charles A. Daboll as administrator of the estate of Alan Gregory Daboll. Plaintiff's decedent was a pedestrian who was struck by an automobile at 11:44 a. m. January 21, 1970, taken to the hospital at 12:20 p. m. and there treated by defendant-doctors after which treatment Alan Daboll died at 9:25 p. m. January 22.

Defendant, Edward Frederick Hoden, Jr., was the owner and driver of the vehicle which struck and injured decedent. Defendants, George H. Pester, M.D., Donald T. Stroy, M.D., and Robert H. Westfall, M.D., are the physicians who treated decedent after his admission to the defendant, Jennie Edmundson Memorial Hospital in Council Bluffs.

The administrator appeals from the ruling of the trial court sustaining the motion of the doctors for summary judgment.

Plaintiff's petition is in three divisions. In division 1 he seeks damages on behalf of the dependents of Alan Daboll; in the second, damages for pain and suffering endured by decedent prior to his death, expenses for medical and hospital care; and in the third, damages for loss to his estate is asked.

Plaintiff alleged in paragraph 9 of each division of his petition the doctors' negligence in one or more of the following particulars was a proximate cause of decedent's death: (a) in failing to examine Alan Gregory Daboll in the accepted and proper medical manner; (b) in failing to exercise due medical care and skill in examining X rays showing Alan Gregory Daboll had a skull fracture; (c) in failing to administer in the accepted and proper medical manner, medical care and treatment for Alan Gregory Daboll's epidural hemotoma; and (d) in failing to prescribe the proper medication in the care and treatment for Alan Gregory Daboll's epidural hemotoma.

The doctors denied, by separate answer, the specifications of negligence and that Alan's death was proximately caused by their negligence.

At the time of filing their answer the doctors also filed interrogatories to be answered by plaintiff. So far as relevant to this appeal, the interrogatories asked plaintiff with respect to each of the four specifications of negligence to describe in detail the standard of care which the doctors should have observed, the manner in which they failed to do so and to furnish the name, address and medical specialty of any medical expert who had expressed the opinion defendants were negligent as alleged.

Six weeks after the interrogatories were filed an order was entered directing plaintiff to file his answers within 10 days. Within that period the court, on plaintiff's application, granted an additional 20 days in which to file answers. Plaintiff had not answered these interrogatories at the time of perfecting this appeal.

Five months after filing answer the doctors moved for summary judgment on the grounds there was no genuine issue of any material fact. Attached to the motion was an affidavit by Dr. Pester and a copy of the report of his physical examination of decedent upon admission to the hospital.

The following is a summary of Dr. Pester's affidavit:

(1) He examined decedent upon his admission to the hospital.

(2) The initial diagnosis was abrasions and contusions in various parts of the body and a "history of cerebral concussion." (The "history" was apparently based upon affiant's knowledge of the auto accident and decedent's statement he had no recollection of the accident.)

(3) Skull X rays ordered by affiant and examined by a radiologist were normal.

(4) Decedent's vital signs remained stable for the 24 hours he was under close observation.

(5) After 24 hours decedent was transferred to routine floor care and seen by Dr. Stroy at approximately 5:45 p. m. at which time decedent was sleeping.

(6) Decedent died at approximately 9:15, January 22.

(7) An autopsy revealed "small linear skull fracture with no evidence of fragmentation or depression" and associated epidural hemorrhage.

(8) Cause of death was reported to be "herniation of the cerebellum into the foramen magnum due to cerebral edema resulting from epidural hemotoma and the linear skull fracture."

The final paragraph of the affidavit states:

Based upon my education, training and experience as a physician and surgeon, it is my opinion that defendants * * * Stroy, * * * Westfall, M.D., and myself, in the examination, care and treatment of Alan Gregory Daboll, exercised the degree of knowledge, skill, care and attention ordinarily exercised by physicians and surgeons under like circumstances in * * * Council Bluffs and like communities, that the nature of the linear fracture was such that it would not be discovered on an x-ray of the skull and that the death of Alan Gregory Daboll did not result from any failure on our part to exercise such degree of knowledge, skill, care and attention."

Referring to Pester's affidavit plaintiff's resistance stated in part:

"That the facts contained in said defendants' affidavit * * * are and will be vigorously controverted in a trial * * * in that the genuine facts * * * are not as stated in said affidavit, and that when all the facts are presented, additional information not contained in said affidavit will be presented to the Court and the jury."

An affidavit by decedent's mother stated she observed her son hazy, dazed and with obvious head injuries when first treated at the hospital. Upon later visits she observed her son suffering from nausea, vomiting, reacting to light, unconscious and continually complaining of head injuries. She stated it was obvious to her decedent had a head injury which would require close medical supervision, observation and testing. Finally, the decedent was unattended "for all practical purposes for eight or nine hours prior to his death and no vital sign check was made during such period."

All hospital records were also attached and the resistance stated such contained entries "controverting the allegations of defendants' affidavit."

The trial court's ruling sustaining the motion for summary judgment and dismissing plaintiff's petition as to defendant-doctors is based primarily on the premise that due to the nature of the negligent acts alleged against defendant-doctors, expert testimony was required to sustain such specifications. The court expressed the view the exception to the rule requiring expert testimony to establish malpractice recognized in Grosjean v. Spencer, 258 Iowa 685, 692, 140 N.W.2d 139, 144 and Sinkey v. Surgical Associates, 186 N.W.2d 658, 660–662 (Iowa 1971), was not applicable since this is not a situation where the physician's lack of care was so obvious as to be within the comprehension of the layman's common knowledge or experience. The court also expressed the opinion that if it had before it the same record on a motion by defendant-doctors for

a directed verdict the court would have no choice except to sustain the motion.

I. In written brief and argument the parties have stated their respective view as to the issues presented for review by this appeal. A problem presented at the outset by these stated issues is whether the trial court properly entered summary judgment dismissing plaintiff's action for decedent's death based upon specific acts of alleged negligence by defendant-doctors in rendering medical treatment when those specifications were denied by the doctors.

Rule 237, Rules of Civil Procedure, provides in part:

" * * *

"(e) Form of affidavits; Further testimony; Defense required. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or filed therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, further affidavits, or oral testimony. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The purpose of the rule is to avoid useless trials. Where there is no genuine issue of fact to be decided, the party with a just cause should be able to obtain a judgment promptly and without the expense and delay of a trial. Bauer v. Stern Finance Company, 169 N.W.2d 850, 853 (Iowa 1969); Jensen v. Voshell, 193 N.W.2d 86, 88 (Iowa 1971); and Davis v. Comito, 204 N.W.2d 607, 608 (Iowa 1973). "In ruling on a motion for summary judgment, the court's function is to determine whether such a genuine issue exists, not to decide the merits of one which does." Bauer v. Stern Finance Company, 169 N.W.2d at 853.

The burden is upon the party moving for summary judgment to show absence of any genuine issue of a material fact. All material properly before the court must be viewed in the light most favorable to the opposing party. Sherwood v. Nissen, 179 N.W.2d 336, 339 (Iowa 1970); Continental Ill. Nat. B. & T. Co. v. Security State Bank, 182 N.W.2d 116, 118 (Iowa 1970); and Davis v. Comito, 204 N.W.2d at 612.

In Steed v. Central of Georgia Railway Company, 477 F.2d 1303, 1305 (5 Cir. 1973), it is said:

"On appeal from a summary judgment, the record must be viewed in the light most favorable to the party opposing the motion. The moving party bears the burden of showing both that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Along this same line there is this statement in Mead v. Lane, 203 N.W.2d 305, 306–307 (Iowa 1972):

" * * * A motion for summary judgment is not supported as required by the rule unless the movant meets his burden to show there is no genuine fact issue. 'Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.' Notes of Advisory Committee on 1963 Amendment to F.R. Civ.P. 56(e)."

In regard to a motion by a plaintiff for summary judgment the court must examine the entire record before it including the pleadings, admissions, depositions, answers to interrogatories, and affidavits, if any, to determine whether evidentiary facts

are presented, which if decided in defendant's favor, would amount to a good defense to the action. Davis v. Comito, 204 N.W.2d at 611.

Rule 237(e), R.C.P., is based on rule 56 of the Federal Rules of Civil Procedure and there are only minor differences between that rule and ours. Bauer v. Stern Finance Company, 169 N.W.2d at 853. Federal interpretations are persuasive. Sherwood v. Nissen, 179 N.W.2d at 339.

By adopting the provisions of rule 56 of the federal rules our rule 237(e) abrogates the former restrictions on availability of summary judgment. Therefore, decisions from states which have adopted a rule of civil procedure patterned after rule 56 of the Federal Rules of Civil Procedure are also deemed helpful.

■ Although a motion for summary judgment under the federal rule as revised may be made in any civil action it has not been commonly interposed and even less frequently granted in negligence actions in federal courts and by states which have adopted the provisions of the federal rule. Wright & Miller, 10 Federal Practice and Procedure: Civil section 2729. Such motion challenges the very existence or legal sufficiency of the claim or defense to which it is addressed. *Id.*, section 2711.

The court in Cortez v. Martinez, 79 N.M. 506, 445 P.2d 383, 385, in stating what it considers to be the correct rule when motion for summary judgment is made in a negligence case, quoted this statement from an earlier New Mexico case:

"It would seem that, especially in negligence cases, the weight of authority is to deny summary judgment, for the obvious reason that there are ordinarily material fact issues to be determined."

In this connection the court quoted the following from 6 Moore's Federal Practice, section 56.17[42]:

" * * * [It is] the general proposition that issues of negligence, including such related issues as * * * contributory negligence, are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner."

The same view is expressed in Wakefield v. A. R. Winter Co., Inc., 121 Ga.App. 259, 174 S.E.2d 178, in this fashion:

"Issues of negligence, including the related issues of assumption of risk, lack of ordinary care for one's own safety, lack of ordinary care in avoiding the consequences of another's negligence and comparative negligence, are ordinarily not susceptible of *summary* adjudication whether for or against the plaintiff or the defendant, but must be resolved by a trial in the ordinary manner." (Emphasis in the original). The foregoing principle has been followed in numerous Georgia cases.

The Kansas court declares summary judgment is seldom proper in negligence cases since the issue of negligence is normally premised on controverted facts, a proper consideration for the trier of fact, Johnson v. Farha Village Supermarkets, Inc., 208 Kan. 241, 491 P.2d 904, 906, and the instances are relatively rare when the facts are such that a court should say negligence has been established as a matter of law by summary judgment. Smithson v. Dunham, 201 Kan. 455, 441 P.2d 823, 826.

The following pronouncement in Lab v. Hall, 200 So.2d 556, 558 (Fla.App.1967) is worthy of note:

"It has been recognized by the overwhelming majority that summary judgments must be cautiously granted in negligence cases. * * * [citing authorities] Issues of negligence are ordinarily not susceptible of summary adjudication. * * * This is particularly true in malpractice suits where, as here, the attendant facts are peculiarly within the knowledge of the movants and the show of negligence is generally dependent upon expert testimony as to the standard of care required and observed."

The general rule is also recognized, perhaps in somewhat different words but always expressing the same principle, in the following: Boozer v. Arizona Country Club, 102 Ariz. 544, 434 P.2d 630, 634; McGahey v. Swinehart, 267 A.2d 469, 471 (Del.Super. 1970); Lundy v. Hazen, 90 Idaho 323, 411 P.2d 768, 770; Schaefer v. Elswood Trailer Sales, 95 Idaho 654, 516 P.2d 1168, 1170; Verplank v. Commercial Bank of Crown Point, 145 Ind.App. 324, 251 N.E.2d 52, 56–57; Bradshaw v. Michigan National Bank, 39 Mich.App. 354, 197 N.W.2d 531, 532; Sauter v. Sauter, 244 Minn. 482, 70 N.W.2d 351, 354; Mally v. Asanovich, 149 Mont. 99, 423 P.2d 294, 297; McNair v. Boyette, 15 N.C.App. 69, 189 S.E.2d 590, 592, aff'd, 282 N.C. 230, 192 S.E.2d 457; Olstad v. Olstad, 126 N.W.2d 795, 797 (N.D.1964); Preston v. Lamb, 20 Utah 2d 260, 436 P.2d 1021, 1022; Anderson v. Turner, 184 S.E.2d 304, 312–313 (W.Va.1971); and Forbes Company, Inc. v. MacNeel, 382 P.2d 56, 57 (Wyo.1963).

The foregoing list of authorities has, in most instances, been limited to one case from each jurisdiction although our research has disclosed many additional cases from each of those jurisdictions which have considered the general proposition.

" * * * There is a general rule that has been followed and approved by this court many times to the effect that issues of negligence, contributory negligence and proximate cause, the resolution of which requires the determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case, cannot ordinarily be disposed of by summary judgment. * * * [citing authorities]." Gross v. Southern Railway Company, 414 F.2d 292, 296 (5 Cir. 1969).

This pronouncement appears to express the view of the federal courts generally in regard to the applicability of federal rule 56 in negligence cases. See Berry v. Atlantic Coast Line Railroad Company, 273 F.2d 572, 581–582 (4 Cir. 1960), cert. den., 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011; Bland v. Norfolk and Southern Railroad Company, 406 F.2d 863, 866 (4 Cir. 1969); Keating v.

Jones Development of Missouri, Inc., 398 F.2d 1011, 1013 (5 Cir. 1968); Rogers v. Peabody Coal Company, 342 F.2d 749, 750–751 (6 Cir. 1965); and Trotter v. Anderson, 417 F.2d 1191, 1192 (7 Cir. 1969).

For additional federal cases bearing on this question see 6 Moore's Federal Practice, section 56.17[42] and the cases cited at note 4 therein and Wright & Miller, 10 Federal Practice and Procedure: Civil section 2729 n. 75.

■ In Harvey v. Great Atlantic & Pacific Tea Co., 388 F.2d 123, 125 (5 Cir. 1968), the court explained the reason for the rule is because of the elusive nature of the concept of negligence, the determination of the existence of which requires the forming of a judgment as to the reasonableness of the conduct of the parties in the light of all the circumstances of the case. If reasonable minds could draw different inferences and reach different conclusions from the facts, even though undisputed, the issue must be reserved for trial.

Nevertheless, Moore, id., section 56.17[42], Wright & Miller, id., section 2729 and the federal cases warn us that it is wrong to conclude that summary judgment is never appropriate in a negligence action, but the circumstances in which it is proper are rare. But, when that unusual case is encountered, it is not be be said that a plaintiff must have his day in court even though there is nothing to be tried. The mistake should not be made of supposing that because summary judgment cannot normally be granted in a particular kind of case, the motion should not be granted in an unusual case of the kind in question where such procedure is in fact appropriate. See Bland v. Norfolk and Southern Railroad Company, 406 F.2d at 866.

"Since certain affirmative defenses are often susceptible of categorical proof, particularly such defenses as release, res judicata, and statute of limitations, a summary adjudication of a claim based on negligence may appropriately be rendered for the de-

fendant when such is the case and the defense is legally sufficient; * * *." Moore, *id.*, section 56.17[42].

As a matter of fact, this court has affirmed rulings of the trial court sustaining motions for summary judgment in actions based on a theory of negligence in Gruener v. City of Cedar Falls, 189 N.W.2d 577 (Iowa 1971) and Goodwin v. City of Bloomfield, 203 N.W.2d 582 (Iowa 1973). However, the statute of limitations of actions brought under the chapter dealing with the tort liability of municipalities and governing bodies—chapter 613A, The Code—was the primary issue involved. The question of negligence did not enter into either decision.

■ It is the court's view the general rule that issues of negligence, contributory negligence and proximate cause, the resolution of which requires determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case, are ordinarily not susceptible of summary adjudication either for or against the claimant but should be resolved by trial in the ordinary manner is the proper one to be followed in this jurisdiction.

The question remains whether the present case is an unusual one where summary judgment is in fact appropriate.

■ II. A prima facie case of medical malpractice must normally consist of evidence which establishes the applicable standard of care, demonstrates that this standard has been violated, and developes a causal relationship between the violation and the harm complained of. Kosberg v. Washington Hospital Center, Inc., 129 U.S. App.D.C. 322, 394 F.2d 947, 949 (1968) and Moore v. Guthrie Hospital Inc., 403 F.2d 366, 367–368 (4 Cir. 1968).

■ The doctors as movants under rule 237(e), R.C.P., are asserting that on the basis of the record as it then exists, there is no genuine issue as to any material fact and they are entitled to a judgment on the

merits as a matter of law. These defendants have the burden of establishing the absence of any genuine issue of material fact relating to the ultimate issue of negligence as framed by the pleadings.

The trial court concluded from an examination of the entire record before it there was no genuine issue of fact for trial and defendant-doctors were entitled to a summary judgment dismissing plaintiff's petition as to them as a matter of law.

In reviewing the granting or denial of a summary judgment motion this court views the underlying facts contained in the pleadings, depositions, answers to interrogatories and admissions on file together with the affidavits, if any, and the inferences to be drawn therefrom in the light most favorable to the party opposing the motion and gives to such party the benefit of any doubt as to the propriety of granting summary judgment. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. Accordingly, this court must reverse the grant of a summary judgment if it appears from the record that there is an unresolved issue of material fact. Wright & Miller, 10 Federal Practice and Procedure: Civil section 2716.

The doctors rely on the affidavit of Dr. Pester as sustaining the burden cast upon them.

This burden of the doctors as the moving parties in a motion for summary judgment to establish the absence of any triable issue is not to be confused with the burden of proof placed on plaintiff at trial to sustain the specifications of negligence asserted against defendants as a proximate cause of his decedent's death in order to generate a jury question.

The doctors in seeking to uphold the trial court's ruling argue once their motion for summary was filed plaintiff may not rest on the mere allegations of his petition but his response by affidavit or otherwise must set forth specific facts showing there is a

genuine issue for trial; if he fails to do so the rule mandates entry of summary judgment against plaintiff.

This argument ignores not only the words "if appropriate" appearing in the last sentence of rule 237(e) but also the Comment in the Notes of Advisory Committee on 1963 Amendment to F.R.Civ.P. 56(e) which is set forth with apparent approval in Sherwood v. Nissen, 179 N.W.2d at 339 and in Mead v. Lane, 203 N.W.2d at 307. The Comment referred to is, "Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." We set out again the last two sentences of this portion of the rule: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate*, shall be entered against him." (Emphasis supplied)

 In light of the Advisory Committee's Comment and the inclusion of the words "if appropriate" in the rule it is logical that if the movant for a summary judgment fails to sustain the burden placed upon him of establishing by evidentiary matter the absence of a genuine issue, the granting of a motion for summary judgment is not appropriate irrespective of any deficiency in the opposing party's affidavit in response.

In reaching its conclusion the court leaned heavily on a statement appearing in Sherwood v. Nissen, 179 N.W.2d at 339, where the court discussed how a trial court ascertained whether a genuine fact issue exists. The opinion quotes excerpts from 6 Moore's Federal Practice, section 56.02[10] and section 56.15[8] to the effect that "functionally the theory underlying a motion for summary judgment is essentially the same as the theory underlying a motion for directed verdict" and "in determining whether he has borne his burden, the analogy between a motion for a directed verdict and a motion for summary judgment is helpful."

The author quotes this statement from Sartor v. Arkansas Natural Gas Co., 321 U.S. 620, 624, 64 S.Ct. 724, 727, 88 L.Ed. 967, 971:

"A summary disposition * * * should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party."

Along this line Wright & Miller, 10 Federal Practice and Procedure: Civil section 2713, quote this statement from Pierce v. Ford Motor Co., 190 F.2d 910, 915 (4 Cir. 1951):

"Even in cases where the judge is of opinion that he will have to direct a verdict for one party or the other on the issues that have been raised, he should ordinarily hear the evidence and direct the verdict rather than attempt to try the case in advance on a motion for summary judgment * * *."

Later in the same section the authors quote the following from Firemen's Mut. Ins. Co. v. Aponaug Mfg. Co., 149 F.2d 359, 363 (5 Cir. 1945):

"We do not think the judge ought on a motion for summary judgment to have * * * concerned himself at this time with the question what he would do if the jury should render a verdict for plaintiffs. A judge indeed does not know what he would do in that regard until he has heard the trial in open court before the jury and has the benefit of the opinion of the jury expressed in their verdict. Only when the evidence is such that it is clear the jury would have none to go on, though they believed that unfavorable to the movant for summary judgment, can the motion be sustained and a jury trial denied."

In this same section the authors discuss at length the comparison of the summary

judgment motion with motions for dismissal, judgment on the pleadings and directed verdicts.

■ In regard to the pronouncement from *Sartor* cited in Moore and repeated earlier in this opinion, attention is directed to the rule in this state that the trier of fact may not totally disregard evidence, but it has the duty to weigh the evidence and determine credibility of witnesses. In other words, the court and jury are not bound to accept testimony as true because it is not contradicted. Schmitt v. Jenkins Truck Lines, Inc., Iowa, 170 N.W.2d 632, 643, and authorities cited.

Under this rule it cannot be successfully maintained that a jury would not be at liberty to disbelieve the evidentiary matter contained in the affidavit of Dr. Pester if such evidence were offered through him as a witness at the trial stage.

■ It is the court's opinion the granting of the motion for summary judgment in the case before us cannot be sustained on the basis of the pronouncement from *Sartor*.

This brings the court to an examination of Dr. Pester's affidavit which has been boiled down to its essentials and set out earlier in this opinion. It simply states that based on the doctor's qualification it was his opinion the examination, care and treatment of decedent by defendant-doctors from the time of decedent's admission to the hospital until his death was rendered in accordance with accepted medical standards and his death did not result from any failure on the part of defendant-doctors to exercise such degree of knowledge, skill, care and attention.

As we view the affidavit it is not sufficient in itself to demonstrate defendant-doctors were not guilty of malpractice so as to justify a determination as a matter of law there was no genuine issue of material fact necessary to be tried.

In Holl v. Talcott, 191 So.2d 40, 45 (Fla. 1966), the court in reversing a malpractice case where the trial court had sustained a motion for summary judgment based on affidavits of defendant-doctors stated that to the extent the affidavits countered the charges of plaintiff's petition they seem "to constitute little more than a plea of not guilty." The statement is apposite here.

Since defendant-doctors did not sustain the burden placed upon them as the moving parties in motion for summary judgment to prove the absence of genuine triable issues the burden of going forward with proof of the existence of such issues was not shifted to plaintiff.

In answer to the problem presented it is the court's opinion the trial court erred in sustaining the motion for summary judgment and dismissing plaintiff's petition as to the doctors. The case is not an unusual one where summary judgment is in fact appropriate.

III. Since the case must be reversed and remanded for further proceedings in accordance with the Rules of Civil Procedure other matters in the record which have come to the court's attention require mention.

Plaintiff makes no explanation of his failure to answer the interrogatories propounded by defendants. Although summary judgment may not be a proper sanction to impose by reason of such failure, we call attention to the fact there are sanctions which a court may see fit to impose.

■ On trial it will be incumbent upon plaintiff in order to generate a jury question to show by expert testimony the pertinent standards of care and that the failure of defendant-doctors to comply with such standards in one or more of the particulars alleged was a proximate cause of decedent's death.

With directions to the trial court to set aside its order sustaining the motion for summary judgment and dismissing plaintiff's petition as to defendant-doctors the case is

Reversed and remanded.

All Justices concur except UHLEN-HOPP, J., who dissents.

UHLENHOPP, Justice (dissenting).

Usually a question of *negligence* cannot be resolved by opposing affidavits because negligence is a fact matter and fact matters are determined by trial. But the summary judgment rule does not exempt negligence *cases* from its operation. In broad language, the rule applies to "a claim, counterclaim, or cross-claim" and either a plaintiff or a defendant may call the rule into operation. Rule 237(a) and (b), Rules of Civil Procedure. If a case involves an issue which is determinable by summary judgment, summary judgment procedure is applicable although the action is based on negligence. Such was the situation in Gruener v. City of Cedar Falls, 189 N.W.2d 577 (Iowa) (question of timely notice in negligence case).

The present negligence case is one which is susceptible to resolution by summary judgment. Defendant doctors are not attempting to try the question of *negligence* itself by summary judgment. They are endeavoring to ascertain whether plaintiff has the essential *evidence* of negligence. The very purpose of summary judgment procedure is to ascertain whether a party has essential evidence or whether his claim or defense exists only on paper. Joiner, Determination Of Issues Without A Factual Trial, 32 Iowa L.Rev. 417, 426.

Plaintiff cannot recover in this lawsuit unless he produces expert testimony. The court states in its opinion, and I agree, that "it will be incumbent upon plaintiff in order to generate a jury question to show *by expert testimony* the pertinent standards of care and that the failure by defendant-doctors to comply with such standards in one or more of the particulars alleged was a proximate cause of the decedent's death." (Italics added.) Specifically, the doctors by their motion required plaintiff to show that he has such expert testimony.

In order to set summary judgment procedure in operation, the doctors had to file a motion supported by affidavit (or by other proof) meeting the requirements of rule 237(e). They did so. The affidavit is by a medical doctor, he speaks from personal knowledge, and he makes statements which would be admissible evidence. He states the facts as to what happened and swears that the doctors in so acting used the care and skill ordinarily exercised by physicians and surgeons. Under proper questioning, he could so testify on trial. That the affiant is one of the defendants would not render this testimony inadmissible; he is still an expert. 61 Am.Jur.2d Physicians, Surgeons & Other Healers § 116 at 240 ("As to the issue of standard of practice, such standard may be established by the defendant's own testimony."). Indeed, the affidavits in summary judgment proceedings are frequently by the parties themselves, stating matters in their own interest.

This meant that plaintiff had to come forth with affidavits (or other proof) likewise meeting the requirements of rule 237(e), which in this case means an affidavit or other proof by an expert, since expert testimony is essential.

Plaintiff did not produce such an affidavit or proof. Hence the trial court properly sustained the motion. Had plaintiff come forth with the essential affidavit or proof, then a question of negligence would have been posed which would have required determination by trial.

Either plaintiff can get the essential expert evidence or he cannot get it. If he can get it, he had to do so at the summary judgment stage. When confronted by a proper motion for summary judgment, he could not elect to wait until trial to get his evidence. The very purpose of the motion is to require that evidence be *then* set forth, to see whether a trial will be necessary at all. If the party needs additional time to get evidence before hearing on the motion, he can ask an extension of time. See Schulte v. Mauer, 219 N.W.2d 496 (Iowa).

But if the party cannot get the evidence, and he did not produce it here or ask an extension of time, then no reason exists to put the parties to a trial. Summary judgment procedure was devised to weed out just such cases.

I would affirm.